Judge1 Underwood,
delivered the opinion of the court.
This is the third time this cause has been brought before this court. Stout’s administrator sued on a note for $1371 75 cents due on the 27th of February, 1821, and dated 15th of August, 1819. A trial was had on the 18th of June, 1828, when the jury found a verdict for $1003 20 cents. This court having remanded this cause for a new trial upon the issue as it now stands, the only question is, was the verdict for too much after cleansing the note of all usury. The whole difficulty arises from want of data upon which to make a correct calculation. It is satisfactorily established, that the intestate charged an interest at the rate of 12i per cent per annum, or a fraction less; and that the interest was compounded upon every renewal of the note. The witnesses speak of renewals being effected every six or twelve months, but it seems that a credit was allowed on the note sued on, exceeding eighteen months. We are satisfied, that the note sued on, grew out of the notes for which Eades was surety. He says he became bound for the debt about the year 1814 or 1815, at which time the debt amounted to about $400, that the money had been due as he learned, for a considerable time, until it had so increased, that Stout was unwilling to indulge longer without security; that *52 the note was renewed usually once a year, adding an interest of 12 or 124 per cent, until about 1819, when the debt amounting to about $800 he, Eades, notified Stout to sue, as it was his wish to be no longer bound, and that some time thereafter, he was informed, that he was released by the substitution of a new note with Wilson as surety. The testimony negatives any new consideration or addition to the loan since Eades was first bound for the money. Take it for granted then, that the first note which Eades executed was nigher or as nigh $400 as it was $500, say $450, then deduct an annual interest of 12í per cent per annum, supposing the debt to have been compounded at that rate, after first deducting the interest at the same rate for eighteen months between the date of the- note, and the time it became due, and the result will be, that in August, 1811, carrying the calculation that far back, there would be due Stout by Palmeteer, $450. This calculation would show that there was truth in the remark made by Stout to Palmateer’s wife in 1818 or 1819, when he informed her there was then about $1000 due him. Taking it for granted that there was not more than $450 due Stout, when Eades first became surety then by making that sum due in 1811, instead of 1814, would be to the interest of Stout. It seems from what one witness says, that the debt now sued for, may have had its origin as early as 1807 or’8, If the debt was often renewed semi-annually with the addition of the usury the firste note executed by Eades, might have exceeded $400, and may not have been executed until 1814, one of the dates spoken of by him; but by transfering the execution of the note to 1811, and taking it to have been then given for $450, which is most favorable to Stout, he cannot legally demand or recover more than simple interest on the amount from that time, in consequence of the usurious exactions which he has practised. Giving interest on that sum from that time, at six per cent per annum, and crediting the product by the $190 for the gig, and by ‡281 46 cents collected under a former judgment which was reversed, it will be seen that the verdict of the jury is excessive, and does violence to the evidence, and all reasonable calculations which can be predicated upon it.
New trial' granted, if the verdict is excessive, and does violence to the evidence and all reasonable calculations which can be predicated upon it.
Wicklijfe and Wooley and Chinn, for plaintiff; Milts and Brown,, for defendants.
Wherefore, we are of opinion that the court erred in not granting a new trial. Judgment set aside, and. cause remanded for a new trial.
, The plainfiffin error must recover his costs..

The counsel for Stout’s administrator, presented the following petition for a re-hearing.

The counsel for Stout’s administrators, now employed, cannot help soliciting the court to re-consider this cause. It was heard without counsel, and the mode of calculation adopted bythe court, it is conceived, leaves out an important consideration in the evidence, which will produce, and ought to produce a different result.
This case was previously reversed, because the verdict was supposed to be too low. Now because it is too high. Has not a jury some rights which ought to be preserved from legal skill and judicial control?
The mode taken by the court, is first to take the sum spoken of by Eades in 1814, of $450, and then calculate simple interest thereon, to the date of the note, and as this, after payments are deducted, will not come to the verdict, by calculating the simple interest up to the verdict, it is concluded that the finding is erroneous.
But there is another mode of calulation taken by the jury below, which is more conformable to the law of the case. The mode taken by the court; it is respectfully insisted, violates a settled principle of law. Recollect that the note is for ‡1371 75, dated the 5th of August, 1819. Now if the sum of $450, as spoken of by the witness, Eades, in 1814, has interest at 124 per centum added, and that interest be compounded annually or semi-annually, it will not amount in 1819, to the $1370 71 cents, b.ut only to $812 at the extent. How, then came the note now sued on to be given for S1371 75 cents, containing an excess of $559 75 cents beyond; the $812? The conclusion certainly follows, that the note now sued on contains within it $559- 75 cents, not impeached by the widow. There must then have been something else included; another loan or a different consideration. We may be asked where is the proof pf this? For the parol evidence on part of the plain *54 tiff, proves no such additional consideration. We answer, there is a sufficiency of evidence better than paroj^ an¿ that is the note itself sued on. That is aided by the rule of law to which we have alluded, and which we contend was overlooked by this court, and that is, the note itself must stand good, except' so far as it is impeached.
The proof does show or conduces to show, that $450 due in 1814, bore interest at I2l per cent per annum, and that compounded till 1819, the date of this note did form part of the consideration of this, but did not make the whole consideration, but fell short of it by upwards of $500. So far this note is impeached as usurious, and no farther. Hence, the jury took out this compounded usury and gave in place o fit simple interest only, and for the residue of the note, to-wit: $559 75 cents they found, and could find no evidence to impeach it, and they therefore allowed it and gave simple interest thereon, and added it to the ‡450 with its.simple interest only, and then took out the payment, and this will be found by calculation to produce the verdict, and this is the calculation of the jury, which we do insist is correct.
When this cause was in this court the last time, it was reversed because the verdict was too low; it was done because the jury had disallowed this excess in the note. That jury had assumed the $450 with its compound interest as constituting the whole sum due, and had given only simple interest on it, and deducted the payments. That produced that verdict, and it was reversed that the residue of the note might come in, and now the case is reversed because' it is in! We trust this matter will be corrected.
There is another strong consideration still appearing. That small verdict which was reversed, because it was too small, was collected, and on this last trial, the defendants below, without any new plea to that effect, gave in evidence, that verdict so collected, to lessen this. Such evidence was wholly improper. The defendant could give no facts in evidence under his plea of payment, but such as existed at the date of his plea. He could not make further payments after his plea, and then give them in evidence to support it. Yet, this he had done, and the jury may have disregarded it as they *55 ought to have done, and yet this court reverses because they did not regard this illegal evidence! The truth is, that the defendants below, on the reversal of that judgtnent, were intitled to their writ of restitution to restore them that money, and yet may have such writ. Or they might, and may yet bring their action for money, had, and received to recover that money back, and the allowing the credit in this case without any pleadings to warrant it, would not bar the recovery in such action. True, such payment might perhaps have been set up in this action by a plea puis darrein continuance, but not without, and the allowing the credit here will he no bar to a future recovery. We trust therefore, that this court will not reverse to let such payment in now, unless we have a complete discharge from a further recovery. For these consideration, we solicit a revision of this case, which we trust will be granted.

Judge Underwood delivered the following response, overruling the petition.

We are fully satisfied, that there was no other consideration for the note sued on, than the debt for which Eades was surety. It is clear that Stout obtained usurious interest at the rate of 12 or 12} per cent per annum, if no more. One witness states that 12 or 12t per cent was demanded on each renewal, and that the note was renewed every six or twelve months. This impeaches the note to the extent of the ,$'559 75 cents which the counsel supposes was not touched. Upon the return of the cause, the payment of the $281 46 cents collected under the former judgment, may be placed as matter puis darrein continuance. Such plea will effectually bar Palmateer’s right to recover that sum, in consequence of the reversal of the judgment in any form of action.

Petition overruled.